# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LOGAN GARRISON,

      Plaintiff,

v.                                                                                    CIV No. 12-1023 LH/SMV

CITY OF RUIDOSO DOWNS,
CHIEF OF POLICE ALFRED ORTIZ, and
RUIDOSO POLICE DEPARTMENT OFFICER
CHRISTOPHER RUPP, individually, and in
their official capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment and for Qualified Immunity and Memorandum of Law in Support Therefore (ECF No. 34)(hereafter "M. Summ. J."). Plaintiff's Verified Stipulated Response with Affidavits to Defendants' Motion for Summary Judgment (ECF No. 39)(hereafter "Pl.'s Resp.") was filed on August 26, 2013.[1] Defendants' Reply in Support of Motion for Summary Judgment and for Qualified Immunity (ECF No. 41)(hereafter "Reply") was filed on September 11, 2013.

---

[1] Although this response brief and its attachments were not timely filed, Plaintiff filed a motion to enlarge time (ECF No. 37), to which Defendants did not object. Defendants filed their reply to this response brief, without objection to any untimeliness of the response. Furthermore, in their Notice of Completion of Briefing (ECF No. 42), Defendants list Plaintiff's response as being filed. For these reasons, the Court will **grant** Plaintiff's motion (ECF No. 37), and considers Plaintiff's response as being timely filed.

The Court, having considered the motion, all related briefs and exhibits and applicable case law, and being otherwise fully advised, concludes that Defendants' motion is **granted in part and denied in part.**

## I. OVERVIEW OF CASE

This lawsuit was filed by a *pro se* Plaintiff.[2]  Plaintiff has sued the City of Ruidoso Downs, as well as Defendants Ortiz and Rupp in their individual and official capacities.  Count I, of his Amended Complaint (ECF No. 6)  is entitled a "Fourth Amendment Violation," and states a claim for unreasonable search, seizure and arrest, resulting in mental and emotional pain. Count I contains allegations only about the conduct of Officer Rupp.  Count II  alleges that the City of Ruidoso Downs, Chief of Police Alfred Ortiz and Officer Rupp entered into a conspiracy to enforce an unconstitutional custom or policy, resulting in a violation of his constitutional rights.  Count III alleges that the unlawful seizure of Plaintiff performed by Officer Rupp was conducted pursuant to a custom or policy of the City of Ruidoso Downs, resulting in mental and emotional pain.  Plaintiff does not seek injunctive relief but only monetary damages in this lawsuit.

Defendants' motion for summary judgment contends that the encounter between Officer Rupp and Plaintiff was consensual, during which Plaintiff voluntarily consented to a pat-down for weapons, at which time illegal items were found on his person.  Defendants argue that this incident did not implicate the Fourth Amendment because it was a consensual encounter, that Plaintiff's arrest was made pursuant to probable cause, and that accordingly, Count I of

---

[2] Plaintiff is proceeding in this matter without the services of an attorney.  *Pro se* litigants are held to less stringent standards than those applicable to licensed attorneys.  *See Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir. 1988).  Nevertheless, they must " 'follow the same rules of procedure that govern other litigants.' "  *Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 139 (10th Cir. 1994)(quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

Plaintiff's Amended Complaint should be dismissed.  M. Summ. J. at 8.  Defendants also argue that Defendant Rupp is entitled to the protection of qualified immunity, because he did not violate Plaintiff's Fourth Amendment rights, and that Count I should be dismissed on this basis as well.  M. Summ. J. at 11.  As to Count II, Defendants argue that Plaintiff's claim for conspiracy must be dismissed for lack of adequate proof, because he cannot prove either a conspiracy, or an actual deprivation of constitutional rights.  Finally, they argue that Count III, which alleges that a municipal policy or custom caused a constitutional injury, must be dismissed, given the lack of proof of such a policy or custom.

## II.  PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit in October 2012 (ECF No. 1).  He filed an amended complaint on January 30, 2013 (ECF No. 6), and Defendants filed their answer on February 21, 2013 (ECF No. 13).  On March 1, 2013, counsel for Defendants filed a Notice of Suggestion of Death (ECF No. 15), indicating that Defendant Alfred Ortiz had just died.  United States Magistrate Judge Vidmar entered a scheduling order on April 23, 2013, which included a discovery termination date of October 21, 2013 (ECF No. 21).  Defendants filed their motion for summary judgment (ECF No. 34) on July 18, 2013, to which Plaintiff responded on August 26, 2013 (ECF No. 39) (hereafter, "Pl.'s Resp.).  Defendants filed their reply brief on September 11, 2013 (ECF No. 41), and a notice that briefing was complete on September 13, 2013 (ECF No. 42).  On January 22, 2014, Defendants filed a proposed pretrial order (ECF No. 43).  Plaintiff's Affidavit in Support of Final Pretrial Order (ECF No. 44) was filed on January 28, 2014.

## III.  OPPORTUNITY TO CONDUCT ADEQUATE DISCOVERY

On page 2 of his response brief, Plaintiff argues that he has not had an opportunity to conduct discovery in this case, and for this reason, asks that the motion for summary judgment be denied or continued.  Rule 56(d) provides that such relief may be available if a nonmovant "shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, . . ."  FED.R.CIV.P.  56(d).  As noted above, discovery terminated in this case on October 21, 2013.  Although Plaintiff made this statement in his July 18, 2013 brief, prior to the end of discovery, he failed to provide specific reasons to the Court as to why he was unable to present facts essential to his opposition to the motion for summary judgment.  For these reasons, Plaintiff's request that the motion be denied or deferred, pursuant to Rule 56(d), is **denied.**

## IV.  FACTUAL BACKGROUND[3]

### A.  Admissibility of Proffered Exhibits

The factual basis for Defendants' motion is primarily provided by their Exhibit 1, a "Statement of Probable Cause," which is Officer Rupp's signed and sworn statement made under penalty of perjury.  This statement will be referred to herein as "Rupp Affidavit."  Defendants' only other evidentiary submission is Exhibit 2, which is the Criminal Complaint filed against Plaintiff, containing a single count for possession of Drug Paraphernalia, a misdemeanor, in violation of N.M. STAT. ANN. § 30-31-25.1(A) and (C)(1997).

The primary evidentiary basis for Plaintiff's response to the motion for summary judgment is provided by Plaintiff's Exhibit C, which is his signed affidavit.  This affidavit begins

---

[3] Many of the asserted facts are undisputed.  Where a factual dispute does exist, the disputed facts will be explained.  The Court relies in its analysis only on facts that are supported by admissible evidence in the record.  In determining the motion for summary judgment, the Court will construe the disputed facts in the light most favorable to the Plaintiff, who is the party opposing the motion.

with this sentence:  "I, Logan Garrison, being of sound mind, over the age of 18 and competent to testify, do hereby depose and state the following under penalty of perjury[.]"   The last sentence of this document states that all "statements made herein are true and correct based on my personal knowledge, information and belief."   Plaintiff's signature on this document was witnessed by a notary public.  This affidavit will be referred to herein as "Plaintiff's Affidavit."

The Court concludes that Exhibits 1, 2 and C are admissible under Rule 56(c), and will be relied upon the Court in its analysis.[4]  Plaintiff's Exhibits D and E are discussed in § VI, the analysis of municipal liability.


### B.  Court's Designation of Undisputed Material Facts

On October 1, 2009, Officer Rupp, a patrol officer, was on duty with the City of Ruidoso Downs Police Department.   M. mm. J., Undisputed Fact ("UF") ¶ A; *see* Rupp. Aff.  ¶¶ 1-2. Officer Rupp was in a fully marked police unit, in full uniform, displaying his badge.  *Id.* ¶ 2.   In the early morning hours of that day, Officer Rupp observed Plaintiff and his companion, Cody D. Johnson, walking west on the side of U.S. Highway 70, in Ruidoso Downs, New Mexico.   M. Summ. J., UF ¶ B.   Officer Rupp states that he observed Plaintiff "throwing his arms wildly in the air . . .  which caused a vehicle that was also traveling west bound to switch lanes," and that he "was unsure at this time if the subject was trying to wave down a vehicle for assistance or what." Rupp. Aff. ¶ 3.   Plaintiff disputes this fact, and in his affidavit states that he "was not

---

[4] Plaintiff has also submitted Exhibit B, which purports to contain verified answers to requests for admissions.  In fact, Plaintiff's responses to Defendants' request for admissions are not verified.  There is a verification page, signed by Plaintiff, for the answers to interrogatories only.  None of these answers to interrogatories has any probative value, insofar as the motion for summary judgment is concerned.  For these reasons, Exhibit B has not been considered by the Court in its analysis herein.

committing any crime or interfering with traffic or trying to flag down any motorist when Officer Rupp approached [him]."  Pl.'s Aff. ¶ 8.

Officer Rupp approached Plaintiff and his companion at an accelerated speed with emergency equipment on and "skidded to a stop immediately demanding identification in a loud angry tone."  Pl.'s Aff. ¶ 2.[5]

Officer Rupp immediately requested identification.  M. Summ. J., UF ¶ D; Rupp Aff. ¶ 4. *See also,* Pl.'s Resp. ¶ 7; Pl.'s Aff. ¶ 2.  Mr. Johnson produced valid New Mexico identification, but Plaintiff did not have an identification card.  M. Summ. J., UF ¶ E;  Rupp Aff. ¶ 4.  Plaintiff provided his name and date of birth, but stated that he did not know his Social Security number. *Id.*

While dispatch was running a wants and warrants search, Officer Rupp asked Plaintiff and Mr. Johnson if they had any weapons on their persons.  M. Summ. J., UF ¶ F;  Rupp Aff. ¶ 4.  Both Plaintiff and Mr. Johnson stated they each had three knives on their persons. *Id.*

What occurred next is substantially disputed.  According to Officer Rupp, the following events occurred: Officer Rupp was advised by dispatch that Mr. Johnson had no wants or warrants.  Rupp Aff. ¶ 5.  Dispatch advised that there was no record of Plaintiff Garrison. *Id.* Officer Rupp observed that one of the men continued to put his hands in his pockets while Officer Rupp was talking to them, even after he asked them not to do so.  M. Summ. J., UF ¶ G;

---

[5] Although Defendants assert that Officer Rupp pulled over to check if Plaintiff and Mr. Johnson needed assistance, M. Summ. J., UF  ¶ C, Officer Rupp's Affidavit does not state this reason for initiating the encounter. Plaintiff disputes this reason with his factual assertion that "Officer Rupp never at any time asked me if I needed assistance."  Pl.'s Resp. ¶ 6; Pl.'s Aff. ¶ 9.  Given this state of the record, especially the absence of any proof from Officer Rupp as to his reasons for initiating the encounter, the Court concludes that there is nothing in the record to establish Officer Rupp's subjective reason for making the stop.  Furthermore, although the parties go to great lengths to discuss this topic, as discussed in footnote 8 herein, the officer's purpose behind questioning these gentlemen is irrelevant to this Court's analysis.

Rupp Aff. ¶ 6.[6]  Further, because he was the only officer present and because both men admitted to having knives, Officer Rupp told them that he was going to perform a "pat-down" search for weapons for the purpose of "officer safety."[7]  M. Summ. J., UF ¶ H;  Rupp Aff. ¶ 6.  Officer Rupp's asked the men if they had any weapons, other than the knives, or any contraband, on their persons, and both men stated that they did not.  M. Summ. J., UF ¶ H.  Officer Rupp asked each subject if there was anything that he needed to know, prior to the pat-down, and both men stated "no."  Rupp Aff. ¶ 7.  Officer Rupp conducted a pat-down search.  Rupp Aff. ¶ 8.

Plaintiff's rendition of facts as to what happened at this stage of the encounter is not disputed by Defendants in their reply brief and is significantly contradictory to Officer Rupp's account.  Plaintiff states that after Officer Rupp told dispatch Plaintiff's name and date of birth, and asked for a wants and warrant check, "Officer Rupp grabbed [Plaintiff's] shoulder[,] pushed [him] to the police unit, . . . [and] placed  handcuffs on [him]".  Pl.'s Aff. ¶ 4.  Further, he states: "I had three knives that were not removed from my possession and [Officer Rupp] began searching my pockets, stating 'this has turned into an investigatory detention, because you['re] not coming back as who you say you are."  Pl.'s Aff. ¶ 4.  After Plaintiff was placed in the patrol unit and then he heard the dispatch state "no record found."  Pl.'s Aff. ¶ 5.

Plaintiff does not describe Officer Rupp's search of him, however Defendants do so in their brief, and in Officer Rupp's affidavit.  While patting down Plaintiff, Officer Rupp felt an item that was consistent with that of a pipe in Plaintiff's pocket.  M. Summ. J., UF ¶ I; Rupp Aff. ¶ 9.  The item was, in fact, a silver pipe that is commonly used to inhale narcotics, with residue in it. M. Summ. J., UF ¶ I; Rupp Aff. ¶ 9.  Officer Rupp also found a black jar that had a clear plastic baggie, which had a strong odor of marijuana. M. Summ. J., UF ¶ I; Rupp Aff. ¶ 9.

[6] There is no proof in the record as to which man was putting his hands in his pockets.
[7] Plaintiff disputes that Officer Rupp told them that he was going to do a pat-down for officer safety and states: "Officer Rupp never asked permission to search me or gave any reason to search me."  Pl.'s Aff. ¶ 7.

Officer Rupp's affidavit states that during the pat-down, he felt a weapon "which was consistent with what is commonly known as a gravity fed knife," and that he secured this weapon at this time.  Rupp Aff. ¶ 8.  Conversely, Plaintiff contends that no knives were removed from his possession, until after he was taken to the police department.  Pl.'s Aff. ¶ 6.

Officer Rupp arrested Plaintiff, charging him with possession of drug paraphernalia.  M. Summ. J., UF ¶ J;  *see*  Defs.' Ex. 2.


## V.  COUNT I:  FOURTH AMENDMENT ISSUES

### A.  Legal Standards

#### 1.  Summary Judgment

##### a. Qualified Immunity Context

As noted above, Defendants have asserted a qualified immunity defense with respect to Count I of the Amended Complaint, the claim under the Fourth Amendment against the individually named Defendants.[8]  Qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force and to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful.  *Saucier v. Katz,* 533 U.S. 194, 206 (2001).

Analysis of a motion for summary judgment in the qualified immunity context differs from that applicable to other summary judgment motions.  When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that:  (1) the defendant

---

[8] Qualified immunity is not available as a defense to municipal liability under § 1983..  *See Owen v. City of Independence,* 445 U.S. 622, 638 (1980).

violated a constitutional right and (2) the constitutional right was clearly established.[9]  *See Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009).  In determining whether the plaintiff has met his burden of establishing a constitutional violation that was clearly established, the facts will be construed in the light most favorable to the plaintiff as the nonmoving party, *Scott v. Harris,* 550 U.S. 372, 378 (2007), and the Court will adopt Plaintiff's version of the facts, insofar as it is supported by the record.  *Id*. at 380.  Because this is summary judgment, the proceeding is beyond the pleading phase of the litigation, and a plaintiff's version of the facts must find support in the record.

        If a plaintiff establishes both elements of the qualified immunity test, then the burden shifts back to the defendant, who, as a movant for summary judgment, must show there are no genuine issues of material fact remaining that would defeat the claim of qualified immunity and that he or she is entitled to judgment as a matter of law.  *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995).

### b.  Non-Qualified Immunity Context

        In situations wherein the defense of qualified immunity has not been invoked, the more typical legal standards for summary judgment apply.  Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Quaker State Minit-Lub, Inc. v. Fireman's Fund Ins. Co.,* 52 F.3d 1522, 1527 (10th Cir. 1995)(quoting FED.R.CIV.P. 56(c).  Once the moving party meets its burden, the non-moving party must show that genuine issues remain for

---

[9] The Court is permitted to exercise its sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

trial.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  The non-moving party must go beyond the pleadings.  *See id.*  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).


### 2.  Search and Seizure

Plaintiff challenges the legality of his encounter with Officer Rupp from its inception. The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, proscribes unreasonable searches and seizures.  The United States Supreme Court has repeatedly affirmed that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).

At issue in this case are two of the three basic types of encounters with police officers: voluntary encounters and arrests.  *See United States v. Johnson*, 364 F.3d 1185, 1188-89 (10th Cir. 2004)(also discussing *Terry* investigative stops).  Each category of encounter has its own analytical structure.  Proper categorization of the encounter determines the rubric under which it will be analyzed.


### a.  Voluntary Encounter

A voluntary encounter involves the voluntary cooperation of a citizen with noncoercive questioning and does not implicate the Fourth Amendment.  A seizure does not occur simply because a police officer approaches an individual and asks a few questions.  *Florida v. Bostick*, 501 U.S. 429, 434 (1991).  So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.*, 499 U.S. 621, 625 (1991), the

encounter is consensual, no reasonable suspicion is required, and the Fourth Amendment is not implicated.  *United States v. Laboy*, 979 F.2d 795, 798 (10th Cir. 1992).

Such an encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.  *Florida v. Bostick,* 501 U.S. at 434.  The Court made precisely this point in *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968):  "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons.  Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

The *Bostick* Court noted several types of police encounters that are not necessarily seizures.  *Florida v. Bostick,* 501 U.S. at 434-35.  These encounters include situations when officers have no basis for suspecting a particular individual, but may generally ask questions of that individual; situations when officers may ask to examine an individual's identification; and, situations when officers may request consent to search an individual's luggage.  The Court confirmed however that even under these types of circumstances, the "free to terminate the encounter" standard applies, emphasizing that officers may not "demand of [individuals] their 'voluntary' cooperation through an intimidating show of authority."  *Id.* at 438.  " 'Consent' that is the product of official intimidation or harassment is not consent at all."  *Id.*

Generally, a seizure occurs only when a police officer "by means of physical force or show of authority . . . in some way restrain[s] the liberty of a citizen," communicating to the reasonable innocent person that he is not free to leave.  *United States v. Sanchez*, 89 F.3d 715, 717-18 (10th Cir. 1996)(quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

The Tenth Circuit has articulated factors that district courts are to consider in determining whether a police-citizen encounter was sufficiently coercive that a reasonable person would

believe he was not free to end the encounter.  These factors include, but are not limited to:  (1) the threatening presence of several officers, (2) the brandishing of a weapon by an officer, (3) physical touching by an officer, (4) use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory, (5) prolonged retention of a person's personal effects such as identification and plane or bus tickets, (6)  a request to accompany the officer to the station, (7) interaction in a nonpublic place or a small, enclosed space, (8) whether officers are uniformed or in plain clothes, (9) absence of other members of the public, and (10) whether defendant was specifically advised that he had the right to terminate the encounter or refuse to consent.  *United States v. Sanchez,* 89 F.3d at 718; *United States v. Laboy*, 979 F.2d 795, 798-99 (10th Cir. 1992).

Determining whether a seizure occurred during a police-citizen encounter is a fact-specific inquiry, to which no one fact is determinative, and which therefore requires a court to decide, based on the totality of the circumstances, whether a defendant has been seized.  *See United States v. Little*, 18 F.3d 1499, 1503-04 (10th Cir. 1994).  Such a test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole.  *Michigan v. Chesternut*, 486 U.S. 567, 574 (1988).

While Defendants characterize this encounter as a non-coercive one, involving Plaintiff's voluntary cooperation, Plaintiff contends otherwise.  Although Plaintiff states  that he did not feel free to leave the scene, his subjective state of mind is not what is relevant here.  What matters is whether or not the circumstances of the encounter are so intimidating as to demonstrate that a *reasonable* person would have believed he was not free to leave.  *INS v. Delgado*, 466 U.S. 210, 216 (1984).

### b.  Arrest

The other type of encounter at issue here is an arrest, which is characterized as highly intrusive or lengthy search or detention.  An arrest is justified only when there is probable cause to believe that a person has committed or is committing a crime.  *United States v. Morgan*, 936 F.2d 1561, 1566 (10th Cir. 1991).

### B.  Analysis

In light of the above-stated legal standards, the Court must evaluate the legality of the encounter, as it evolved between Plaintiff and Officer Rupp, culminating in Plaintiff's arrest, to determine whether each step was lawfully undertaken by Officer Rupp.  The Court will evaluate the entire situation chronologically, bearing in mind its ongoing nature, recognizing the inherent difficulty of categorizing activities of the parties into precise stages.

### 1.  Count I is Dismissed as to Officer Ortiz

For two reasons, the Court limits potential liability under Count I to Officer Rupp in his individual capacity.

First of all, because Count I does not include any allegations against Officer Alfred Ortiz, it is therefore dismissed as to him.  *See Robbins v. Oklahoma,* 519 F.3d 1242, 1249 (10th Cir. 2008)(providing that when a qualified immunity defense is raised by an individual government defendant, the plaintiff must make sufficient allegations to provide fair notice to each defendant as to the basis of the claims against him or her).

Secondly, a Notice of Suggestion of Death (ECF No. 15), filed by Defendants on March 1, 2013, states that Chief of Police Alfred Ortiz died prior to that date.  Accordingly, the claims

against Officer Ortiz in his individual capacity must be dismissed, because no party filed a motion for substitution within 90 days of this Notice.  *See* FED.R.CIV.P. 25(a)(1).  Defendants recognize that claims against Officer Ortiz in his official capacity are not abated, and the Court agrees with this conclusion.  Reply at 1, n.1; *see* FED.R.CIV.P. 25(d).

### 2.  First Stage of Encounter:  Officer Rupp's Request for Identification[10]

The Court concludes that, based on the undisputed facts, Officer Rupp's initial conversation with Cody Johnson and Plaintiff was consensual in nature and did not constitute a seizure.  Accordingly, insofar as the initial conversation is concerned, the Fourth Amendment is not implicated, and accordingly Plaintiff has not established a claim for a violation of a constitutional right that was clearly established when this incident occurred. This conclusion is made despite the facts that Officer Rupp was in a fully marked police unit, was in full uniform wearing his badge of office, approached at an accelerated speed, skidded to a stop, and immediately demanded identification in a "loud angry tone."  This encounter occurred on a public street in the presence of one other pedestrian.  Officer Rupp was the only officer present and he did not have a weapon drawn nor did he display any other show of force.  There is no proof that Defendant was specifically advised that he had the right to terminate the encounter. During this initial stage of the encounter, Officer Rupp did not touch either gentleman.  He was not in possession of Plaintiff's identification card or any other belongings, which would have made it more difficult for Plaintiff to depart from the encounter.  There is no evidence that

---

[10]  The Court notes that, although both parties devote considerable effort discussing *why* Officer Rupp stopped to ask for the identification of these pedestrians, the officer's purpose behind questioning them is irrelevant to this stage of the Court's analysis.  The Tenth Circuit has held that an officer may approach a citizen and ask questions based solely on a hunch  --  i.e., a specific reason for a consensual encounter need not be articulated by police officer.  *See United States v. Lambert*, 46 F.3d 1064, 1067 (10th Cir. 1995).

Officer Rupp positioned himself in a manner that would have made the reasonable person feel that he was physically trapped or could not leave.   The circumstances of the encounter were not so intimidating as to demonstrate that a reasonable person would not have believed he was not free to go.

In light of the *totality* of these undisputed facts --  including at least a couple of facts that lend support to a contrary conclusion (i.e., that Officer Rupp demanded identification in a loud, angry tone and that he did not specifically advise the Defendant that he had the right to terminate the encounter), the Court concludes that the circumstances of the encounter were not so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave. *See INS v. Delgado*, 466 U.S. at 216-17.  In fact, having considered all circumstances of the initial encounter, the Court concludes that a reasonable person would have felt free to disregard Officer Rupp and go about his business, and that the Fourth Amendment was not implicated.

### 3.  Next Stage of Encounter

Once Officer Rupp told dispatch Plaintiff's name and date of birth and asked for a wants and warrant check, as noted above, the parties' renditions of the facts diverge.  While it is undisputed that the initial consensual encounter escalated into an arrest of Plaintiff by Officer Rupp, what happened immediately prior to the arrest is disputed.  As explained below, given a lack of sufficient evidence from Defendants and the dispute in the facts that were provided to the Court, qualified immunity must be denied as to Count I.

According to Plaintiff's version of the facts, once Officer Rupp told dispatch his name and date of birth and asked for a wants and warrant check, the situation *immediately* escalated

into an arrest, as evidenced by the highly intrusive actions of Officer Rupp in grabbing, pushing and handcuffing Plaintiff.  Conversely, Defendants describe a scenario in which, after the initial encounter, Officer Rupp asked the subjects about their potential possession of weapons, and conducted pat-down searches of them.  Defendants provide absolutely no facts regarding the seizure and arrest of Plaintiff.

To resist Defendant Rupp's defense of qualified immunity, Plaintiff must meet his two part burden of proof.  In resolving questions of qualified immunity, courts are required to resolve a " 'threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts … show the officer's conduct violated a constitutional right?' "  *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  "If no violation of a constitutional right is established, "there  is no necessity for further inquiries ….  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

The Court has carefully studied the response brief of *pro se* Plaintiff Garrison.  In light of the facts he puts forth, the Court interprets his proof, directed at fulfilling the first prong of his burden of proof in opposition to the qualified immunity defense, to be evidence of a violation of his constitutional right to be free from wrongful arrest.

When a warrantless arrest is the subject of a § 1983 action, an officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest.  *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1191 (10th Cir. 2007).  "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent

person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay,* 45 F.3d at 1476.

Viewing the evidence in the light most favorable to Plaintiff and accepting Plaintiff's version of the events as true, the Court finds that a fact finder could easily find that Officer Rupp violated his Fourth Amendment right to be free from an unreasonable arrest, given the support in the record to establish that Plaintiff was arrested without probable cause.

Plaintiff's affidavit states that after Officer Rupp told dispatch his name and date of birth and asked for a wants and warrant check, Officer Rupp grabbed his shoulder, pushed him to the police unit and handcuffed him. Defendants do not dispute this version, and therefore it is accepted by the Court, as is Plaintiff's testimony that it was at this point that Officer Rupp began searching his pockets, stating, "this has turned into an investigatory detention, because you are not coming back as who you say you are." Plaintiff's version of the facts finds support in the record.

Based on Plaintiff's version of the incident, subsequent to the voluntary encounter described above in § V.B.2, Officer Rupp immediately subjected him to arrest, without any reasonably trustworthy information, sufficient to lead a prudent person to believe that Plaintiff had committed or was committing an offense. According to Plaintiff, Officer Rupp seized him because dispatch did not have a record for him. Defendants make no argument that this is a punishable offense, and to the knowledge of the Court, this does not constitute a crime. In fact, Plaintiff was not charged, incident to his arrest, for any violation of law, in this respect. The Court concludes that Plaintiff has met his burden in opposing qualified immunity, by showing that he was arrested without probable cause, in violation of his Fourth Amendment right to be free from a wrongful arrest.

As to the next prong of Plaintiff's burden of proof, the Court must address whether the right to be free of unreasonable arrest was clearly established.  The relevant, dispositive inquiry in making this determination is to evaluate whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Saucier v. Katz,* 533 U.S. at 202. "Ordinarily, . . .  for a rule to be clearly established there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Casey v. City of Federal Heights,* 509 F.3d 1278, 1284 (10th Cir. 2007)(internal quotation marks omitted).

The critical question is whether, at the time that Plaintiff was arrested, a reasonable officer could have concluded that probable cause existed for the arrest.  From a general standpoint, it was clearly established, at the time of Plaintiff's arrest in October of 2009, that a government official must have probable cause to arrest an individual.  As noted by the Tenth Circuit in *Fogarty v. Gallegos,* 523 F.3d 1147, 1159-60 (10th Cir. 2008), in the context of an unlawful arrest, "this analysis is simple, for the law was and is unambiguous:  a government official must have probable cause to arrest an individual." (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007).  *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1312 (10th Cir. 2002)(warrantless arrest without probable cause violates an arrestee's clearly established Fourth Amendment rights).  Under Plaintiff's version of events – which, significantly, is undisputed by Defendants --  he was grabbed, pushed and handcuffed --  all at a time when Officer Rupp was without any trustworthy information, sufficient for a prudent person to believe that Plaintiff had committed or was committing an offense.   Well established constitutional precedent, given these facts, would have put a reasonable officer on notice that he lacked probable cause to effectuate an arrest at this juncture.

For these reasons, the Court concludes that Plaintiff has met the second prong of his burden of proof, sufficient to resist the qualified immunity defense.

The burden now shifts to Defendant Rupp, to show that there are no genuine issues of material fact remaining that would defeat his claim of qualified immunity.  Officer Rupp's version of the facts is quite different from Plaintiff's version, insofar to what sequence of events immediately proceeded his grabbing, pushing and handcuffing Plaintiff.  He contends that while dispatch was running its search, he asked both men if they had any weapons and that they told him that they each had three knives.  Further, his affidavit states that after he was advised by dispatch that there was no record of Plaintiff, he observed that one of the men kept putting his hands in his pockets.  He states that he advised both men to keep their hands out of their pockets and that he advised them that he would conduct a pat-down for weapons for safety reasons.  He asked each man if there was anything he needed to know, prior to the pat-down, and that both men said "no."  At this point -- after being advised by dispatch that there was no record for Plaintiff --  Officer Rupp testified that he conducted a pat-down and found a knife on Plaintiff, and secured the weapon at this time.

The significance of the discrepancy in the proof is that while Defendants characterize this as a situation in which Plaintiff voluntarily consented to a pat-down for weapons, during which Officer Rupp found illegal items in Plaintiff's pocket, Plaintiff represents the situation as one where he was grabbed, pushed and handcuffed – all before the time that he was searched by Officer Rupp.  In other words, Defendants' version relies on the premise that, once Officer Rupp found illegal items on Plaintiff's person, pursuant to the consensual pat-down, Officer Rupp possessed probable cause for an arrest. Conversely, Plaintiff's version relies upon his account

that he was seized, searched and arrested, without adequate cause – all in violation of his clearly established Fourth Amendment rights.

In order to prevail on their motion, now that Plaintiff has met his burden of proof, Defendants must establish that the undisputed material facts show that Officer Rupp's arrest of Plaintiff was supported by probable cause to believe that he had committed or was committing a crime.  Defendants do not squarely address this issue in their presentation to the Court. Officer Rupp's affidavit does not provide a clear sequence of events, nor is his police report supplemented in any way in the record.  It fails to provide crucial facts, which would give a more complete picture and provide a factual basis upon which the Court could determine the objective reasonableness of Officer Rupp's actions.  For example, Officer Rupp's affidavit does not even mention that he ever restrained Plaintiff or arrested him.  Furthermore, although the Court knows that such restraint and arrest actually occurred, Defendants have not informed the Court of the precise sequence of events leading up to Plaintiff's detention and arrest, and have therefore deprived the Court of crucial information on which it could evaluate Officer Rupp's conduct. The Court has no facts before it to indicate that Officer Rupp had reasonable, articulable suspicion that the Plaintiff had been, was, or about to be, engaged in criminal activity.  Officer Rupp has failed to show that there are no genuine issues of material fact remaining that would defeat this claim of qualified immunity.  Accordingly, his motion for qualified immunity relating to the claims in Count I must be **denied.**

## VI.  COUNT III:  MUNICIPAL LIABILITY

Count III of Plaintiff's Amended Complaint alleges that Officer Rupp's conduct in seizing him, demanding his identification[11], and running a warrant check was done pursuant to an unconstitutional custom or policy of the City of Ruidoso Downs and Police Chief Alfred Ortiz.  Defendants' motion for summary judgment seeks dismissal of Count III, arguing that Plaintiff has failed to establish that a municipal policy or custom caused a constitutional injury.

The Supreme Court established in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690-91 (1978), that in order to have recourse against a municipality or other local government under Section 1983, plaintiffs "must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Id.* at 691.  "In other words, municipalities are 'responsible only for their own illegal acts,' and cannot be held 'vicariously liable under § 1983 for their employees' action.' " *Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011).  *See also Carney v. City and County of Denver,* 534 F.3d 1269 (10th Cir. 2008)(holding that a municipality may be held liable for the unconstitutional acts of its employees under Section 1983, if the plaintiff can show that the alleged conduct was the result of a municipal policy or custom). To establish municipal liability, "it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

---

[11] At this juncture, the Court is compelled to note that in § V.B.2, it concluded that the Fourth Amendment was not implicated in the initial encounter --  during the portion of time when Officer Rupp stopped Plaintiff and Mr. Johnson, and asked them to produce identification. Accordingly, Plaintiff's argument about potential municipal liability, arising from an unconstitutional municipal policy or custom of the City of Ruidoso Down, in seeking identification of everybody walking down the street, is not on point.  Given the Court's conclusions in §V.B.2, discussion of municipal policy or custom regarding pre-arrest protocols would have been more relevant.  Out of fairness to the parties, the Court will nevertheless evaluate the arguments they present, with regard to municipal liability.

In the *Carney* case, the Tenth Circuit noted the difference between municipal policies and customs.  Quoting *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003), the Court noted that an unconstitutional deprivation is caused by a municipal policy if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself.  *Carney v. City and County of Denver*, 534 F.3d at 1274.  In general, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick,* 131 S.Ct. at 1359 (citing *Monell,* 436 U.S. at 694).

On the other hand, a custom is interpreted as an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law.  *Carney v. City and County of Denver,* 534 F.3d at 1274.  "To be a custom, the actions of the municipal employees must be continuing, persistent and widespread."  *Id.* (quoting *Gates v. Unified Sch. Dist. No. 449,* 996 F.2d 1035, 1041 (10th Cir. 1993)).

Defendants argue that Plaintiff has failed to demonstrate that the alleged conduct was the result of a municipal policy or custom, or that unconstitutional actions were carried out by an official with final policy making authority.  Further, they contend that a supervisory liability theory is similarly unsupported by Plaintiff's proof submitted in opposition to their motion for summary judgment.

In support of his municipal liability claim, Plaintiff has submitted two exhibits, Exhibit D and Exhibit E.  Exhibit D (ECF No. 40) is an affidavit from Plaintiff's father, Steve Garrison ("Mr. Garrison").  In this affidavit, Mr. Garrison states that he spoke with Officer Rupp on October 1, 2009, when he came to the police department to post bail for his son, Plaintiff Logan Garrison.  At that time, he testifies that he recorded his conversation with Officer Rupp, and that

22

this conversation is recorded on Exhibit E, which Mr. Garrison maintains is a true and correct copy of the tape upon which he recorded their conversation.  In his affidavit, Mr. Garrison sets forth the content of the portion of the conversation that he wishes the Court to consider, as recorded on the tape.  Mr. Garrison has designated the following content of his conversation with Officer Rupp for the Court's consideration:

> Officer Rupp:  When people have no ID, it is usually because they are trying to conceal who they are, when he gave his name and date of birth and he comes back not on file and he has no other form of ID.  State law says that I can detain him until I can positively identify him and make sure he is not a wanted felon.

> Steve Garrison:  Who is the Chief of Police?

> Officer Rupp:  Chief Ortiz.

> Steve Garrison: Does he feel the same way that y'all need to identify everybody that is walking down the streets?

> Officer Rupp:  yea, yea we do and that's come down because we are having just so much criminal damage, burglaries, auto burglaries and stuff like that and we can go find 'em later.

> Steve Garrison:  There wasn't any crime in the immediate area?

> Officer Rupp:  No.

This Court has concerns that at least part of this conversation contains inadmissible hearsay. Assuming, without deciding that the entire conversation, contained on Exhibit E and recited in Exhibit D, is admissible and properly considered on summary judgment, the Court nonetheless concludes that it is insufficient to prove a municipal policy or custom, resulting in constitutional violations, according to the legal standards set forth above.  The opinion of one officer, about a "need" to identify everyone walking down city streets, even if agreed upon by

the chief of police, is insufficient to establish a municipal custom, let alone a policy, that is so persistent and widespread as to have the force of law.

As further support of his claim for municipal liability, Plaintiff argues that the policy under which Officer Rupp was operating during their encounter, is the same policy that was found in a New Mexico Court of Appeals opinion to be unconstitutional.  In his attempt to establish that the custom or policy was the same during both incidents, he refers to testimony from the arresting officer (Officer Friberg) in the case of *State v. Soto,* 143 N.M. 631 (Ct. App. 2008).  Officer Friberg was employed in 2005 by the Ruidoso Downs Police Department. According to the *Soto* opinion, Officer Friberg testified at a suppression hearing that "it is the practice of the Ruidoso Downs Police Department to routinely pull people over in order to get information about their identities."  *State v. Soto*, 143 N.M. at 632.

Even were the Court to consider Officer's Friberg's testimony from the unrelated *Soto* matter, the Court concludes that it is not probative on the issue of what the police departmental policy was, more than four years later, on the topic of criteria for stopping citizens and asking for proof of identification, or more importantly, as to how it relates to the topic of pre-arrest protocols.

Plaintiff has produced no evidence that his allegedly illegal detention and arrest were caused by the decision of any duly constituted legislative body, or by an official whose acts may fairly be said to be those of the municipality itself.  Furthermore, Plaintiff has not provided sufficient evidence of a municipal policy or custom.  One officer's opinion as to what the practice of the police department was in 2005 is simply inadequate to meet the threshold of proof by case law in this area of law.

In addition to his failure to provide any evidence establishing the existence of a municipal policy or custom underlying the alleged unconstitutional conduct of Officer Rupp, Plaintiff has failed to produce evidence that Defendants Ortiz or Rupp had final policymaking authority or that someone with final policymaking authority approved their alleged conduct. *Seamons v. Snow,* 206 F.3d 1021, 1029 (10th Cir. 2000). Assuming Defendant Ortiz was Officer Rupp's supervisor, Plaintiff has failed to establish his active participation in, or acquiescence of, Officer Rupp's conduct. Plaintiff has not shown that Defendant Ortiz acted knowingly or with deliberate indifference to the fact that a constitutional violation would occur, which is fatal to his supervisor liability claim under Section 1983. *See Serna v. Colorado Dept. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).

In summary, Plaintiff has failed to establish that genuine issues of material fact remain for trial and that there is sufficient evidence favoring Plaintiff for a jury to return a verdict in his favor on this issue. Accordingly the Court concludes that summary judgment must be granted to Defendants as to Count III.

## VII.  COUNT II:  CIVIL CONSPIRACY

Count II of Plaintiff's Amended Complaint alleges that Defendants entered into a conspiracy by their agreement to enforce an unconstitutional custom or policy, and acted individually and in concert to commit the overt acts as set forth in the complaint that violated constitutional rights and clearly established law. Defendants' motion for summary judgment seeks dismissal of Count II, arguing that Plaintiff has not submitted admissible evidence that a conspiracy existed between two or more individuals, and that he has not submitted any evidence of action taken in furtherance of a conspiracy.

Allegations of conspiracy may form the basis of a § 1983 claim.  *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).   However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants.   *Id.*   Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.  *Id.*

As noted above, Plaintiff has failed to advance sufficient proof to survive summary judgment on Count III.   In other words, he has failed to put forth sufficient proof of an unconstitutional municipal policy or custom.   His claim of conspiracy in Count II is premised on a conspiracy by agreement to enforce an unconstitutional policy or custom.   Absent proof of an unconstitutional policy or custom, there can be no conspiracy to enforce it.   Furthermore, Plaintiff has failed to set forth specific facts showing agreement and concerted action by Defendants.

In summary, Plaintiff has failed to establish that genuine issues of material fact remain for trial and that there is sufficient evidence favoring Plaintiff for a jury to return a verdict in his favor on this issue.   Accordingly the Court concludes that summary judgment must be granted to Defendants as to Count II.

## VIII.  PUNITIVE DAMAGES

All that remains in this lawsuit given the Court's rulings to this point, is the claim in Count I against Officer Rupp in his individual capacity.   This claim, under the right circumstances, could give rise to a claim for punitive damages.   In their motion for summary judgment, Defendants seek dismissal of Plaintiff's claim for punitive damages.

In *Smith v. Wade,* 461 U.S. 30 (1983), the Supreme Court concluded that punitive damages may be recovered from individual officers, although not from government entities.

Such damages are available when the official's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."   *Id.* at 56.   It is noteworthy that not every intentional violation of a plaintiff's constitutional rights subjects a defendant to punitive damages.   *Melton v. City of Oklahoma City*, 879 F.2d 706, 733 (1989).   Even if a defendant officer's conduct is *objectively* unreasonable, an assessment of punitive damages requires an assessment of his *subjective* state of mind.   *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989).

As alluded to throughout this opinion, in the summary judgment motion and briefs the parties have primarily focused on the initial stage of this encounter, which the Court has concluded does not implicate the Fourth Amendment.   This focus is illustrated by arguments such as that of Defendants on page 11 of the reply brief, where they contend that the undisputed facts demonstrate that Officer Rupp did not act with the requisite level of intent to warrant punitive damages, given that he "pulled over to see if Plaintiff and Mr. Johnson needed assistance."   In contrast, the Court has determined that the time when actionable conduct could have occurred was later, during the stage of the encounter when Officer Rupp grabbed, pushed and handcuffed Plaintiff.

Given the fact that the parties have not focused on the sequence of events that potentially constitute actionable conduct of Officer Rupp, the Court concludes that it is unable to currently evaluate or make a ruling about the subjective state of mind of Officer Rupp at the relevant time. Given this state of the record before the Court, Defendants' motion for summary judgment on punitive damages must be **denied.**

**WHEREFORE,** in light of the foregoing reasons, the Court concludes that Defendants'
Motion for Summary Judgment and for Qualified Immunity and Memorandum of Law in
Support Therefore (ECF No. 34) is **granted in part and denied in part, as follows:**

I.  Defendants' motion is granted as to Count I, resulting in dismissal of Count I, except
insofar as it relates to claims against Officer Rupp, in his individual capacity, as explained above.
This ruling results in the dismissal with prejudice of Chief of Police Alfred Ortiz, in his
individual capacity.

II.  Defendants' motion is granted as to Counts II and III, and these Counts are hereby
dismissed with prejudice in their entirety.   This ruling results in the dismissal of these
Defendants:   the City of Ruidoso Downs, and Chief of Police Alfred Ortiz and Officer
Christopher Rupp, in their official capacities.

III.  Defendants' motion is denied insofar as Plaintiff's claim for punitive damages is
concerned.  Punitive damages remain in this case, and may be applicable to the claims remaining
in Count I against Officer Rupp, in his individual capacity.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**